**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**REUNION, INC., CYPRESS BRAKE**
**PROPERTIES, L.P. AND ANNANDALE**
**INVESTORS, L.P.**                                                     **PLAINTIFFS**

**VS.**                                        **CIVIL ACTION NO. 3:09-cv-269TSL-JCS**

**FEDERAL AVIATION ADMINISTRATION,**
**UNITED STATES DEPARTMENT OF TRANSPORTATION,**
**UNITED STATES OF AMERICA, JOHN DOE ONE,**
**JOHN DOE TWO, JANE ROE ONE and JANE ROE TWO**            **DEFENDANTS**

**DEFENDANTS' MEMORANDUM TO ACCOMPANY  MOTION TO DISMISS**
**OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Pursuant to Fed R. Civ. P. 12(b)(1), Defendants Federal Aviation Administration, United States Department of Transportation and United States of America, Postmaster General of the United States, by and through the United States Attorney for the Southern District of Mississippi, files his Memorandum of Law in Support of  Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, as follows:

**SUMMARY OF FACTS**

The Federal Aviation Administration (FAA) is an agency within the Department of Transportation responsible for, among other things, the establishment and operation of navigational aids to aviation.  One type of navigational aid is the Very High Frequency Omnidirectional Radio Range/Tactical Air Navigation facility (VORTAC).  This facility emits radio signals to aircraft to provide azimuth and distance information for the aircraft's navigation

in the terminal, approach and en-route phases of flight in both the high and low altitude sectors. The Plaintiffs here own the property on which the Jackson, Mississippi (MS) VORTAC, its clear zone and its easements are located. The lease for the occupancy of the VORTAC expired on September 30, 2008, and the Plaintiffs have not and will not in good faith renegotiate the lease. As of May 2009 the FAA had offered to pay approximately eight months of back rents due on the lease but the landlord refuses to accept payment. Therefore, the FAA is in the process of condemning the property.

The FAA has maintained the Jackson, MS VORTAC facility located approximately 12.6 nautical miles northwest of the Jackson Evers International Airport in Madison County, MS. for at last the past 30 years. The VORTAC site is an airport navigational facility critical to aviation safety and used for all weather approaches to and departures from the Jackson, MS. airport as well as other airports located throughout the region. The VORTAC also provides radio guidance information for high and low altitude instrument navigation in the National Airspace System throughout the southeastern states. Without the site, aircraft would be restricted in operations into and out of seven airports in the region and along certain air navigation routes in Mississippi, Alabama, Texas and Tennessee. It is in the best interest of the Government to utilize the facility in its present location. There will be a continuing need for the facility throughout the foreseeable future.

The first lease for the VORTAC was filed in 1977. In January 1999 one of the present owners purchased 2,115 acres including the property on which the Jackson, MS. VORTAC, its clear zone and its easements are located for $2,000,000. Since early 2000 at least one of the present owners has developed tracts and streets for at least 681 platted residential lots, an 18-hole golf course, other improvements and utilities. In such development the owner has sold

interests to "sister" companies who make up the Plaintiffs herein. The FAA has informed the property owners that such development was contrary to the terms of the lease, may interfere with air navigation, and could not be tolerated.  In September 2005, the FAA received a notice from the property owner's attorney advising that because the existence of the VORTAC would not be compatible to the future use of the property as a planned community, golf course, and country club, the owner would not renew or extend the lease beyond September 2008, and it expected the FAA to relocate the VORTAC before that date.  The FAA found that to relocate the VORTAC would be too costly and pose an unacceptable burden on the national airspace system.  When the FAA requested that the Plaintiffs negotiate a new lease the Plaintiffs refused.

The VORTAC facility is approximately 20 feet high and approximately 30 feet in diameter.  It is placed on a footprint of approximately 0.00418 acres of land necessary to maintain and service the facility.  The original rent was for the footprint, a 1,000 foot radius of clear zone and a 5.4 acre ingress/egress easement.

## LAW AND ARGUMENT

**This Court Lacks Jurisdiction over Plaintiffs' Fifth Amendment Takings Claims.**

It is well established "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, at 212 (1983); United States v. Sherwood, 312 U.S. 584 (1941).  Consent for the United Sates to be sued "'cannot be implied but must be unequivocally expressed,'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (citation omitted); United States v. Nordic Village, Inc., 503 U.S. 30 33-34 (1992).  When the United States consents to be sued, the terms of its waiver of sovereign immunity define the scope of the Court's jurisdiction.  United States v. Mottaz, 476 U.S. 834 (1986); Sherwood, 312 U.S. at 586.  Congress has made the United States Court of Federal

Claims ("CFC") the exclusive forum for Fifth Amendment claims over $10,000.[1] 28 U.S.C. §

1491(a)(1); Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 71 n.15

(1978); Regional Rail Reorganization Act Cases, 419 U.S. 102, 127 (1974); Yearsley v. Ross

Construction Co., 309 U.S. 18, 21 (1940); Hurley v. Kincaid, 285 U.S. 95, 103-04 (1932);

Narramore v. United States, 960 F.2d 1048, 1051-52 (Fed. Cir. 1992); Anchor Pointe Boat-A-

Minimum Ass'n, Inc. v. Meinke, 860 F.2d 215, 218-19 (6th Cir. 1988); Bowles v. U.S. Army

Corps of Engineers, 841 F.2d 112, 113 (5th Cir. 1987); Amoco Production Co. v. Hodel, 815

F.2d 352, 358 (5th Cir. 1987). Thus, Plaintiffs' taking claims must be dismissed form this Court

unless Plaintiffs will admit that the takings claims they assert are for more than $10,000.

Plaintiffs assert that 28 U.S.C. § 1331 grants the district court jurisdiction as this is a

"civil action arising under the Constitution of the United States, to wit, the Fifth Amendment…"

Plaintiff's Complaint at ¶ 6. Contrary to Plaintiffs' assertion, however, this Court does not have

subject matter jurisdiction pursuant to 23 U.S.C. § 1331 for Plaintiffs' takings claims. While this

statute affords a grant of jurisdiction to the district courts to adjudicate matters raising federal

questions, it does not constitute a waiver of sovereign immunity for purposes of Fifth

Amendment Takings Claims. Skelly Oil Co. v. Phillips Petroleum, 339 U.S. 667 (1950).

As then-Justice Rehnquist noted in his concurring opinion in Duke Power Co. v. Carolina

Environmental Study Group, Inc., 438 U.S. 59, 101-02 n.4, "[t]o conclude that Section 1331

embraces a 'taking' claim makes the Tucker Act largely superfluous ...." Accordingly, section

---

[1] Under what is called the "Little" Tucker Act, 28 U.S.C. § 1346(a)(2), the United States District Courts are granted concurrent jurisdiction to the Court of Federal Claims in cases where the claim asserted is $10,000 or less. However, a plaintiff can continue to maintain its claim in District Court only if it is willing to waive its right to the recovery of damages in excess of the $10,000 jurisdictional limit. Smith v. Orr, 855 F.2d 1544, 1553 (Fed. Cir. 1988).

1331 does not waive sovereign immunity for purposes of bringing a claim based on the takings clause of the Fifth Amendment for a monetary amount exceeding $10,000 in district court. Broughton Lumber Co. V. Yeutter, 939 F.2d 1547, 1556 (Fed. Cir. 1991).

The Complaint, on its face, does not ask for a money judgment but instead offers disguised claims for monetary damages whose exclusive jurisdiction lies in the CFC pursuant to the Tucker Act.  Plaintiffs, however, cannot avoid dismissal of their claims for money damages by artful pleading or phraseology in an effort to escape the appropriate forum.  See Colorado Dept. Of Highways v. U.S. Dept. Of Transp., 840 F.2d 753, 755 (10th Cir. 1988); Chula Vista City Sch. Dist. V. Bennett, 824 F.2d 1573, 1579 (Fed. Cir. 1987); Hoopa Valley Tribe v. United States, 596 F.2d 435, 436 (Ct. Cl. 1979).  As the Fifth Circuit explained:

> In the 'murky' area of Tucker Act jurisprudence … one of the few clearly established principles is that the substance of the pleadings must prevail over their form …Courts consistently endeavor to 'pierce' the pleadings so that artful pleading does not under cut the jurisdiction of the Claims Court (that is, Congress' intent in enacting the Tucker Act) … It is clear, both in this circuit and elsewhere, that a plaintiff cannot avoid Tucker Act jurisdiction simply by characterizing an action as equitable in nature.

Amoco Production Co., 815 F.2d at 361 (citations omitted).  As set forth more fully below, jurisdictional requirements cannot be avoided by framing the complaint to appear to seek only injunctive, mandatory, or declaratory relief against the government or government officials.  Id. Here, FAA must continue to operate the VORTAC on the property to fulfill its statutory duties related to air navigation.  Indeed, the Plaintiffs' acknowledge in their complaint that the FAA informed the Plaintiffs that the FAA "had decided that it would not move the Facility" and that if Plaintiffs were unable to extend the lease the FAA would "purchase" the property.  Plaintiffs' Complaint ¶ 23.  FAA is statutorily permitted to obtain property "by condemnation or otherwise" to carry out its statutory duties.  49 U.S.C. § 40110.  Thus, the actual relief able to be obtained by

the Plaintiffs' for the FAA's occupation of its property is monetary relief pursuant to the Tucker

Act and jurisdiction for claims over $10,000 lie exclusively in the CFC.  See Rowe v. United

States, 633 F.2d 799, 802 (9th Cir. 1980) (the jurisdiction of the CFC cannot be avoided when

"actual relief resulting from the agency review would be monetary") (citing Lee v. Blumenthal,

588 F.2d 1281, 1283 (9th Cir. 1979).

**Plaintiffs Are Note Entitled to Equitable Remedies.**

Plaintiffs are not entitled to equitable relief with respect to the FAA's continued

occupation of the subject property.  Even if a taking is presently ongoing, the Supreme Court has

noted that injunctive or other equitable relief is not appropriate:

> [e]quitable relief is not available to enjoin an alleged taking of private property
> for a public use, duly authorized by law, when a suit for compensation can be
> brought against the sovereign subsequent to the taking.

Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-1017 (1984);  accord, Anchor Pointe Boat-A-

Minium Ass'n, Inc. v. Meinke, 860 F.2d 215, 218; Bay View, Inc. v. AHTNA, Inc., 105 F.3d

1281, 1284-86 (9th Cir. 1997); Clouser v. Espy, 42 F.3d 1522, 1539-40 (9th Cir. 1994).  As the

Court explains, "[t]his maxim rests on the principle that so long as compensation is available for

those whose property is in fact taken, the governmental action is not unconstitutional."  United

States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 128 (1985), (citing Williamson County

Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 (1985));

see also Hurley v. Kincaid, 285 U.S. 95 (1932).

Thus, the Fifth Amendment "does not prohibit the taking of private property, but instead

places a condition on the exercise of that power" and is designed "not to limit the governmental

interference with property rights per se, but rather to secure compensation in the event of

otherwise proper interference amounting to a taking." First English Evangelical Lutheran Church v. Los Angeles, 482 U.S. 304, 314-15 (1987), accord, J.B. Ranch, Inc. v. Grand County, 958 F.2d 306, 308-09 (10th Cir. 1992). The takings clause is "not prohibitory, but rather, compensatory in nature." Commonwealth Edison Co. v. United States, 46 Fed. Cl. 29, 41 (Cl. Ct. 2000); Rose Acre Farms, Inc. v. Madigan, 956 F.2d 670, 672-74 (7th Cir. 1992).

Nor must compensation "be paid in advance of or even contemporaneously with the taking." Presault v. ICC, 494 U.S. 1, 11 (1990). The only requirement is that a "reasonable, certain and adequate provision for obtaining compensation" exists at the time of the taking. Id. "If the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194-195 (1985) (quoting Ruckelshaus v. Monsanto Co., supra, 467 U.S. at 1013, 1018 n.21).

The analysis as to whether a Tucker Act remedy exists is "whether Congress has in the [statute] withdrawn the Tucker Act grant of jurisdiction to the [Claims Court] to hear a suit involving the [statute] 'founded . . . upon the Constitution." Ruckelshaus v. Monsanto Co., 467 U.S. at 1017. See also Presault, 494 U.S. at 12-13 ("[W]e have always assumed that the Tucker Act is an 'implied promise' to pay just compensation which individual laws need not reiterate."); Clouser v. Espy, 42 F.3d. 1522, 1539 (9th Cir. 1994) (finding no evidence that the relevant statutes had withdrawn the Tucker Act remedy); Rose Acre Farms, Inc., 956 F.2d at 673-74 (same); Inupiat Community v. United States, 680 F.2d 122, 127 (Cl. Ct. 1982) ("The general rule in takings cases [] is that a promise to pay just compensation is implied unless Congress has explicitly disavowed it."). Here, there is no indication that Congress has withdrawn a Tucker

-7-

Act remedy for alleged takings of property by the FAA, thus this Court lacks jurisdiction for takings claims over $10,000.

## CONTRACT DISPUTES ACT

The Lease Agreement is subject to the Contract Disputes Act of 1978 (codified as 41 U.S.C. §§ 601-613) ("CDA").  Under the CDA, a claim must be presented to the contracting officer for a decision.  41 U.S.C. § 609(a)(1)(2002).  A claim of more than $100,000 must be certified before the contracting officer.  41 U.S.C. § 605(c)(1)(2000).  The Plaintiff has failed to present such a claim so this action must therefore fail.

## IMPROPER CLAIM

Plaintiffs allege that the Defendants have taken their property without Plaintiffs' consent. Hence, Plaintiffs' claim lies in common law trespass, not in breach of contract of the Lease Agreement.  *See e.g. Exxon Corporation v. United States,* 45 Fed. Ct. 581, 639 (1999). Therefore, Plaintiff's cause of action regarding both permanent and temporary taking fails to state a claim upon which relief can be granted.

## *BIVENS* CLAIM

**Plaintiffs May Not Maintain This Action Because Special Factors Counsel Against the Implication of a Damages Remedy Directly Under the Constitution.**

Plaintiffs in this case seek, among other demands, to recover damages against four unnamed federal officials.  The basis for their claim is Bivens v. Six Unknown Named Federal Agents, 403U.S. 388 (1971), and its progeny, which have created causes of action for damages to remedy certain constitutional violations.  The Supreme Court's "more recent decisions have responded cautiously to suggestions that Bivens itself, the Supreme Court has made clear that it is only proper to do so where there are "no special factors counseling hesitation in the absence of

affirmative action by Congress."  Bivens, 403 U.S. at 396; see also Carlson v. Green, 446 U.S. 14, 18-20 (1980); Davis v. Passman, 442 U.S. 228, 246-47 (1979).

 "[T]he concept of 'special factors counseling hesitation in the absence of affirmative action by Congress ' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent."  Schweiker v. Chilicky, 487 U.S. at 423.  Thus, the Supreme Court has made clear that "special factors" exist in cases involving a comprehensive statutory scheme which provides individuals who are aggrieved by governmental action a meaningful remedy against the United States, even if that remedy is not complete.  See id.; Bush v. Lucas, 462 U.S. 367 (1983).  For example, in Bush, the Court declined to create a cause of action for damages resulting from the violations of the First Amendment rights of a federal employee.  The Court relied on the fact that Congress had created "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations."  Id. at 388.  The Court recognized that this system provided less than a complete remedy for First Amendment violations.  But the question of whether further remedies should be made available depended on policy considerations involving the "balancing [of] government efficiency and the rights of employees" that the Court concluded that the comprehensive remedial scheme enacted by Congress constituted a "special factor" counseling against the recognition of a Bivens action.  462 U.S. at 390.

 In Schweiker, the Court found that the remedial procedures of the Social Security Act, albeit incomplete because they did not provide for the recovery of compensatory damages, precluded the judicial creation of a damages remedy directly under the Constitution.  Schweiker, 487 U.S. at 412.  The Court recognized that where the statutory scheme is comprehensive and the omission of a damages remedy by Congress was not inadvertent, the courts may not

supplement the statute by creating a remedy that Congress has withheld.  <u>Schweiker</u>, 487 U.S. at 423, 429.

Similar to the statutory schemes at issue in <u>Bush</u> and <u>Schweiker</u>, the Federal Aviation Act represents a comprehensive congressional effort to regulate a matter of public interest, the safety of air transportation.  Congress enacted exclusive remedial provisions for individuals adversely affected by regulatory action under the Act.  As discussed above, an individual affected by an FAA action relating to a navigation facility may appeal the action administratively and, ultimately, to the courts of appeals for relief from such an action.  And both the administrative appeal body and the courts of appeals may consider constitutional challenges in the course of reviewing a revocation or suspension order.  <u>United States v. McBride</u>, 788 F. 2d 1429, 1432-33 (10th Cir. 1986); <u>Gaunce v. DeVincentis</u>, 708 F. 2d 1290. 1293 (7th Cir.), cert denied, 464 U.S. 978 (1983).  The carefully drafted judicial review scheme of the Federal Aviation Act plainly suggests that Congress' failure to include a damages remedy for unconstitutional conduct arising from enforcement was not inadvertent.

Furthermore, to the extent that plaintiff seeks monetary damages for violations of the Administrative Procedures Act (APA) that also constitute violations of the Constitution, the "special factors" doctrine precludes the plaintiffs' damages claim.  In other words, even if the plaintiffs were able to demonstrate that the FAA failed to promulgate its policy of relocating the VORTAC in accordance with the APA, that such a failure also constituted a violation of their rights under the Fifth Amendment, and that the individual defendants were directly and personally responsible for the FAA's failure to comply with the APA, the plaintiff could not pursue a damages claim against those individuals.

The Ninth Circuit has held that where an action for equitable relief may be instituted

under the APA to challenge a rulemaking proceeding, the courts should refuse to create a right of action for damages directly under the Constitution.  In <u>Sky Ad, Inc. V. McClure</u>, 951 F. 2d 1146 (9th Cir. 1991), the plaintiffs, a corporation and its sole shareholder, claimed economic injury arising from an FAA rule banning fixed-wing aircraft from the air route along a portion of the California coast.  The Ninth Circuit had earlier held that the ban was invalid because it was a substantive rule not promulgated in compliance with the publication and comment requirements of the APA.  See id. at 1147 (citing to Southern California Aerial Advertiser' Ass'n v. FAA, 881 F. 2d 672, 678 (9th Cir. 1989).

The plaintiffs in <u>Sky Ad</u> filed a Bivens action against several FAA officials, alleging that the FAA rule banning fixed-wing aircraft violated their due process rights and resulted in the destruction of their business. See id. at 1147. The Court of Appeals for the Ninth Circuit dismissed the Bivens claims on the ground that Congress' authorization in the APA for the courts to set aside unconstitutional rulemaking constituted a special factor counseling against the judicial recognition of a damages remedy under the Constitution. See id. at 1148, 1149. The court found that Congress' failure to allow a damages remedy for violations of the publication and comment requirements of the APA was not inadvertent. See id. at 1149.1

Like the plaintiffs in <u>Sky Ad</u>, plaintiffs in this case must not be permitted to sue individual defendants for damages they claim to have sustained as a result of an alleged denial of their rights. Because the APA provides explicit remedies for such constitutional violations, plaintiffs must be relegated to those remedies and may not seek additional relief in the form of equitable relief and damages.

The Plaintiffs here have not alleged that any special factors exist that would allow a *Bivens* claim against these individual defendants.

## SUMMARY JUDGMENT

Motion for Summary Judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when: . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ. R. 56(c). See also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Shanoff v. State of Illinois Department of Human Services, 258 F.3d 696, 701 (7th Cir. 2001); Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The standard for summary judgment reflects the standard governing a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." Palmer v. BRG of Georgia, Inc., 874 F.2d 1417, 1422 (11th Cir. 1989); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Inferences from the facts must be drawn in the light most favorable to the non-moving party. Id.

A fact is material if it is outcome determinative under the applicable law. Borcky v. Maytag Corporation, 248 F.3d 691, 695 (7th Cir. 2001); Oest v. Illinois Department of Corrections, 240 F.3d 605, 610 (7th cir. 2001); Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S. Ct. 1598, 1610 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999); Oates v. Discovery Zone, 116 F.3d

1161, 1165 (7th Cir. 1997). See also, T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

809 F.2d 626, 630 (9th Cir. 1987)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986))

(The moving party has the initial burden of "identifying for the court those portions of the

materials on file that it believes demonstrates the absence of any genuine issue of material fact.")

However, the movant need not advance affidavits or similar materials to negate the existence of

an issue on which the opposing party will bear the burden of proof at trial. Celotex, 477 U.S. at

323; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). Otherwise stated, if the

opposing party "fails to make a sufficient showing to establish the existence of an element

essential to that party's case, and in which that party will bear the burden of truth at trial,"

summary judgment is proper. Celotex, 477 U.S. at 322.

        If the party meets its burden, the opposing party cannot stand on the pleadings nor simply

assert that it will discredit the movant's evidence at trial. Id.; Boruski v. United States, 803 F.2d

1421, 1428 (7th Cir. 1986). See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent

must do more than simply show that there is some metaphysical doubt as to the material facts.")

Rather, they must come forward with "specific facts showing that there is a genuine issue for

trial" in order to defeat the motion. Civ. R. 56(e); Celotex, 477 U.S. at 323; Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247-248 (1986); T.W. Elec., 809 F.2d at 630; White v. General

Motors Corp., 908 F.2d 669, 674 (10th Cir. 1990), cert. denied, 498 U.S. 317, 323 (1986).[3] "The

opposing party, however, must do more than create a mere "colorable" factual dispute to defeat

summary judgment; disputed facts must be outcome determinative. Irrelevant or unnecessary

---

[3]Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

facts do not preclude summary judgment even when they are in dispute." <u>In re: Greenwood Air Crash</u>, 873 F. Supp. 1257 (S.D. Ind. 1995), citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-249 (1986); <u>International Bhd. of Boilermakers v. Local 354</u>, 897 F.2d 1400, 1406 (7th Cir. 1990). <u>See</u> <u>California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc</u>., 818 F.2d 1466, 1468 (9th Cir. 1987) ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). "If the factual context makes the [opposing] party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." <u>Cal. Arch. Bldg. Prods. v. Franciscan Ceramics</u>, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). Statements that are speculation, conjecture, or that are mere conclusions, are not admissible evidence, and thus not a sufficient defense to a summary judgment motion. <u>Gobitz v. Corvilla, Inc.</u>, 196 F.3d 879, 882 (7th Cir. 1999); <u>Stagman v. Ryan</u>, 176 F.3d 986, 995 (7th Cir. 1999).

When the matter at issue is not within the understanding or is beyond the ken of the trier of fact, testimony of an expert witness on that issue is necessary. <u>Kumbo Tire Co. Ltd. v. Carmichael</u>, 119 S. Ct. 1167, 1174 (1999); <u>Mozes v. Medtronics, Inc.</u>, 14 F. Supp. 2d 1124, 1128 (N.D. Minn 1998)(in cases where it would be speculative for the fact finder to decide the issue without having the benefit of expert testimony on the standard of care, expert testimony is necessary); <u>Simpson v. Northeast Illinois Reg'l Commuter R.R. Corp.</u>, 957 F. Supp. 136, 137 (N.D. Ill. 1997); <u>Schmaltz v. Norfolk & Western Ry.</u>, 896 F. Supp. 180, 182 (N.D. Ill. 1995); <u>Indiana Michigan Power Co. v. Runge</u>, 717 N.E.2d 216, 231-232 (Ind. App. 1999); <u>Daub v.</u>

Daub, 629 N.E.2d 873, 878 (Ind. App. 1994). See also, Prosser & Keeton, The Law of Torts §

269 (5th Ed. 1984). The court in In re Greenwood Air Crash has held that:

> In virtually every case what a reasonable ATC would do in defendant's
> position will necessarily need to be established through expert testimony.
> Factors that will be relevant to such a determination will include
> consideration set forth in the [Air Traffic Control] Manual. (citations
> omitted). These would include: higher priority duties of the ATC, radar
> limitations, volume of traffic, frequency congestion and controller
> workload.

873 F. Sup. At 1265. Therefore, the field of air traffic control facilities and the duties of

technicians who establish the need for navigation facilities fall squarely within that category of

issues contemplated by the courts to be "beyond the ken" of the trier of fact.

A motion for summary judgment may be stayed (under Rule 56(f) for purposes of

seeking additional discovery if the opposing party provides affidavits specifying (1) what

additional discovery is desired (Schaffer v. A.O. Smith Harvestore Prod., Inc., 74 F.3d 722, 732

(6th Cir. 1006)); (2) what facts they hope to discover to raise a material issue of fact (Terrell v.

Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991); Mackey v. Pioneer National Bank, 867 F.2d 520,

523-24 (9th Cir. 1989)); Brae Transportation, Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443

(9th Cir. 1986)); and (3) why the evidence sought is expected to exist. Terrell v. Brewer, supra.

In essence, therefore, the party requesting additional discovery has the burden of showing how

that discovery will preclude summary judgment. United States A.E. Lopez Enterp., Ltd., 74 F.3d

072, 975 (9th Cir. 1996).

The courts "have denied a Rule 56(f) application where the evidence sought " . . . was the

object of pure speculation.'" Church of Scientology of San Francisco v. IRS, 991 F.2d 560, 562

(9th Cir. 1993); Conkle Jeong, 73 F.3d 909, 914 (9th Cir. 1995). If additional discovery is

allowed, it will be "tailored specifically to the question" the summary judgment motion presents.

Anderson v. Creighton, 483 U.S. 635, 647 n.6 (1987).

      Here the Plaintiffs have not made a prima facie case for unlawful entry, wrongful

detainer and ejectment, and the Defendants' Motion for Summary Judgment should be granted

      WHEREFORE PREMISES CONSIDERED, the Defendants ask this Honorable Court to

dismiss this action in its entirety, or in the alternative, to grant summary judgment.


                                          Respectfully submitted,

                                          UNITED STATES OF AMERICA
                                          STAN HARRIS
                                          Acting United States Attorney


                       By:    /s/ Edward O. Pearson         
                                   EDWARD O. PEARSON
                                   Assistant United States Attorney
                                   188 E. Capitol Street, Suite 500
                                   Jackson, Mississippi 39201
                                   Telephone (601) 973-2887
                                   Facsimile: (601) 965-4032
                                   Mississippi Bar Number 4080


OF COUNSEL:
Raymond Veatch, Esq.,
Federal Aviation Administration Southern Region
Office of Regional Counsel

Jessica Held, Esq.
Environmental & National Resources
United States Department of Justice, Washington, D.C.

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2009, I electronically filed the foregoing **Defendants'**

**Memorandum to Accompany  Motion to Dismiss** with the Clerk of the Court using the

ECF system which sent  notification of such  filing to the following:

> **ATTORNEY FOR PLAINTIFFS**
> **Robert M. Frey, Esq.**
> **BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC**
> **210 E. Capitol Street, Suite 1700**
> **Post Office Box 22567**
> **Jackson, Mississippi 39225-2567**

/s/Edward O. Pearson
EDWARD O. PEARSON
Assistant United States Attorney