UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


REUNION, INC.,
CYPRESS BRAKE PROPERTIES, L.P.,
AND ANNANDALE INVESTORS, L.P.                    PLAINTIFF


VS.                            CIVIL ACTION NO. 3:09CV269TSL-FKB


FEDERAL AVIATION ADMINISTRATION,
UNITED STATES DEPARTMENT OF TRANSPORTATION,
UNITED STATES OF AMERICA,
JOHN DOE ONE, JOHN DOE TWO,
JANE ROE ONE AND JANE ROE TWO                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

On August 28, 2009, defendants Federal Aviation

Administration (FAA), United States Department of Transportation,

and United States of America, filed a motion to dismiss pursuant

to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in

the alternative, for summary judgment pursuant to Rule 56.[1]

_____

[1]    Defendants John Doe One and Jane Roe One and John Doe
Two and Jane Roe Two are alleged to be employees of the Federal
Aviation Administration whose identities are not yet known.
Whereas defendants' motion purports to seek dismissal of
plaintiffs' <u>Bivens</u> claim against these Doe and Roe defendants,
Reunion has urged the court to disregard the Government's motion
as it pertains to these defendants since the Doe and Roe
defendants have not even been identified yet, much less been
served and appeared in this action seeking dismissal in their own
right.  However, the fact that the Doe and Roe defendants have not
appeared and filed a motion to dismiss is no bar to the court's
consideration of dismissal of the claims against them for failure
to state a claim upon which relief can be granted, given that a
court may dismiss any complaint *sua sponte* for failure to state a
claim for which relief can be granted pursuant to Rule 12(b)(6).
<u>First Gibralter Bank, FSB v. Smith</u>, 62 F.3d 133, 135 (5th Cir.
1995); <u>Guthrie v. Tifco Indus.</u>, 941 F.2d 374, 379 (5th Cir. 1991),
<u>cert.</u> <u>denied</u>, 503 U.S. 908, 112 S. Ct. 1267, 117 L. Ed. 2d 495

Plaintiffs Reunion, Inc., Cypress Brake Properties, L.P., and
Annandale Investors, L.P. (collectively Reunion) responded in
opposition to the motion and filed a cross-motion or partial
summary judgment on counts three (Administrative Procedures Act),
four (Declaratory Judgment), five (injunction), six (ejectment),
seven (unlawful entry and detainer), and eight (summary removal of
holdover tenant) insofar as these counts relate to the FAA,
Department of Transportation and the United States. A number of
events have transpired since the briefing on these motions
concluded, including the filing of an amended complaint adding
causes of action, including a cause of action under the Freedom of
Information Act, as to which claim Reunion has moved for summary
judgment. In addition, based on the fact that the United States
has filed a separate complaint for condemnation relating to the
property involved in this action, defendants herein have recently
moved to dismiss portions of plaintiffs' complaint in this cause
as moot. The court, having considered these various motions and
responses thereto, concludes that the Governments' motion to
dismiss should be granted, and that the Owners' motion for partial

---

(1992) ("Although [defendant] did not file a motion to dismiss
pursuant to Rule 12(b)(6), the district court was authorized to
consider the sufficiency of the complaint on its own initiative").

summary judgment on counts three, four, five, six, seven and eight should be denied.[2]

The facts giving rise to this lawsuit are briefly set forth below.[3] Pursuant to a lease agreement dated December 17, 1996, the United States, through the FAA, leased from Reunion's predecessors in title certain property located in Madison County, Mississippi, for use as a Very High Frequency Omnirange Radar Tactical Air Navigation (VORTAC) facility, which is used in aircraft navigation. Beginning three years prior to the September 30, 2008 termination date established in the lease agreement, Reunion informed the FAA, through a regional FAA representative, that the continued presence of the VORTAC facility on the property conflicted with Reunion's plans for development of the property and that therefore, Reunion did not intend to renew or extend the lease agreement. The FAA initially responded in May 2006 that the FAA had a continuing need for the facility and that, "failing a

---

[2] After briefing on the Government's original motion to dismiss was complete, Reunion filed an amended complaint, adding, *inter alia*, a cause of action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 et seq. Reunion has moved for partial summary judgment on the FOIA claim, and in response, the Government has moved to dismiss the FOIA claim as moot. While Reunion has responded to the motion to dismiss and has just filed its reply in support of its partial summary judgment motion, the Government's reply in support of its motion to dismiss is not yet due. The court will therefore await receipt of that submission prior to issuing any ruling with respect to the FOIA claim.

[3] An opinion entered by the Court of Federal Claims in a related case contains much greater factual detail. See Reunion, Inc. v. United States, 90 Fed. Cl. 576 (2009).

negotiated resolution, the FAA would 'convert' the property to government ownership."  Over the next three years, the parties continued in discussions concerning the expiration of the lease, with Reunion taking the position throughout the discussions that the FAA needed to pursue plans for relocating the facility before the lease expired, and the FAA taking the position that the facility in that location was needed, that removal or relocation was not possible, and ultimately, that if Reunion would not extend the lease, the FAA would purchase the property.

In fact, Reunion did not agree to extend the lease, and as of September 30, 2008, the FAA had not taken steps to vacate the property or to condemn the property.  Accordingly, on October 16, 2008, Reunion sent a written demand to the FAA that it quit and vacate the VORTAC property.  The FAA did not vacate the property, nor did it take appropriate steps to condemn the property, and on April 29, 2009, Reunion filed the present action against the FAA/United States seeking declaratory and injunctive relief under the Declaratory Judgment Act and Administrative Procedures Act and various other state and federal laws, based on allegations that the FAA's failure to timely and correctly follow its own regulations resulted in the FAA's becoming a holdover tenant following expiration of the lease, and that the FAA's continued occupancy of the VORTAC property following expiration of the lease deprived Reunion of its property without due process of law and

amounted to a taking without just compensation, in violation of the Fifth Amendment to the United States Constitution. As relief, Reunion sought a declaratory judgment that the FAA and its agents and officials have been unlawfully occupying the VORTAC property since October 1, 2008 in violation of plaintiff's Fifth Amendment rights to due process and that such occupancy is a taking without just compensation, and a declaratory judgment that Reunion is entitled to immediate and exclusive possession of the VORTAC property. Reunion sought an order ejecting and/or removing the FAA from the property and enjoining the FAA, and its agents and servants, from continuing to occupy the property and from resisting Reunion's efforts to oust or remove them from the property.

In addition to its claims against the FAA/United States, Renuin also purported to assert <u>Bivens</u> claims against as-yet-unidentified FAA officials, John Doe One and Jane Doe One, in their individual capacities, for "pursuing a course of action that they knew was in violation of the FAA's own regulations, and that they knew would result in [Reunion] being deprived of [its] property without due process of law, and without just compensation, in violation of [its] rights under the Fifth Amendment," and against FAA officials John Doe Two and Jane Doe Two, in their individual capacities, for continuing to possess the

VORTAC property in violation of Reunion's Fifth Amendment right to due process and just compensation.

On April 30, 2009, one day after filing the present action in this court, Reunion filed a separate suit in the Court of Federal Claims, alleging, just as it has here, that the United States has continued to occupy the property after the expiration of the lease without compensation in violation of the Takings Clause of the Fifth Amendment, and also alleging an APA claim based on the same allegation as here, that the FAA has violated its own regulations by failing to vacate plaintiffs' property upon expiration of the lease. See Reunion, Inc. v. U.S., 90 Fed. Cl. 576, 578 (2009). In that action, Reunion additionally asserted a contractual theory for recovery of damages, alleging that when the FAA refused to vacate the VORTAC property upon expiration of the lease, it breached its contractual obligations respecting occupation of the property.

In response to Reunion's complaint in the Court of Federal Claims and a motion by Reunion to strike the Government's jurisdictional defenses, the United States agreed that under the Tucker Act, 28 U.S.C. § 1491, the Court of Federal Claims had jurisdiction over Reunion's takings claim.[4] The Government also

---

[4]    The court agreed, stating as follows:
The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department,

admitted that a taking had occurred and advised that it would file

a condemnation action in the district court by December 31, 2009.

In light of that explicit admission, in an opinion entered

December 10, 2009, the Court of Federal Claims found the

Government was liable for a "temporary taking" of the VORTAC

---

or upon any express or implied contract with the United
States, or for liquidated or unliquidated damages in
cases not sounding in tort."  28 U.S.C. § 1491(a)(1).
The Tucker Act waives sovereign immunity, but it does
not by itself confer a right to recovery.  <u>United States
v. Testan</u>, 424 U.S. 392, 398, 96 S. Ct. 948, 47 L. Ed.
2d 114 (1976) (stating that the Tucker Act confers
jurisdiction where a substantive right already exists).
Such a right must be founded in some other source of law
that "'can fairly be interpreted as mandating
compensation by the Federal Government for the damages
sustained.'"  <u>United States v. Mitchell</u>, 463 U.S. 206,
216-17, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983)
(quoting <u>Testan</u>, 424 U.S. at 400, 96 S. Ct. 948); <u>see
also United States v. White Mountain Apache Tribe</u>, 537
U.S. 465, 473, 123 S. Ct. 1126, 155 L. Ed. 2d 40 (2003)
("[A] fair inference will do.").

Here, "[i]t is undisputed that the Takings Clause of the
Fifth Amendment is a money-mandating source for purposes
of Tucker Act jurisdiction." <u>Jan's Helicopter Serv.,
Inc. v. Federal Aviation Administration</u>, 525 F.3d 1299,
1309 (Fed. Cir.2008); <u>see also</u> <u>Preseault v. Interstate
Commerce Comm'n</u>, 494 U.S. 1, 12, 110 S. Ct. 914, 108 L.
Ed. 2d 1 (1990); <u>Moden</u>, 404 F.3d at 1341 ("[T]o the
extent [plaintiff has] a nonfrivolous takings claim
founded upon the Fifth Amendment, jurisdiction under the
Tucker Act is proper.").  Accordingly, the court has
jurisdiction over Reunion's first claim for relief,
alleging the United States has taken its private
property for public use and seeking just compensation
under the Fifth Amendment.
<u>Reunion, Inc.</u>, 90 Fed. Cl. at 582-583.  The court concluded that
Reunion's contractual claim was also jurisdictionally viable under
the Tucker Act.  <u>Id.</u>

property,[5] and that Renuion was entitled to just compensation from the United States for the period between the end of the lease and whatever date the United States ultimately filed its condemnation action in district court.[6]

On December 31, 2009, the United States, as promised, filed a Complaint in Condemnation and Declaration of Taking in this court pursuant to 40 U.S.C. § 3114, as Civil Action Number 3:09CV269HTW-LRA. This filing, as well as the fact that the Court of Federal Claims had issued its opinion establishing the United States' liability on Reunion's takings claim in that court, prompted this court to inquire of the parties as to their respective positions on the effect of these events on the pending motions and/or the issues/causes of action in the present action. In an initial,

---

[5] The court recognized that the future filing of a Declaration of Taking by the United States would not moot Reunion's claims before that court for compensation for the period of the FAA's occupancy after the lease expired and before a Declaration of Taking was filed, since a Declaration of Taking in a condemnation action has effect only prospectively. Reunion, Inc., 90 Fed. Cl. at 578. Accordingly, Reunion's claims for compensation for the "temporary taking" during the post-lease expiration and pre-Declaration of Taking period remained viable.

[6] Although the court found the Government liable on Reunion's takings claim because the Government had confessed liability as to that claim, the court recognized that Reunion's contract claim remained viable, and thus, the court allowed discovery not only on the issue of just compensation but also on breach of contract issues, finding that Reunion "should have the opportunity to perfect that claim and to present evidence at trial to the extent Reunion believes it is entitled to damages for breach of contract that exceed or differ from just compensation for the taking." Id. at 584.

email response, Reunion acknowledged that as a result of the

United States' Declaration of Taking, any claims in this case that

concern Reunion's alleged immediate, ongoing right of possession

of the VORTAC property have become moot, since by virtue of the

Declaration of Taking, the United States now has a legal right to

exercise dominion and control over the subject property.[7] Reunion

thus conceded that counts two (mandamus), five (injunction), six

(ejectment), seven (unlawful entry and detainer) and eight

(summary removal of holdover tenant) are moot, as is its motion

for summary judgment relating to these counts, and it therefore

expressly consented to dismissal of these counts *without*

---

[7]     The Declaration of Takings Act, 40 U.S.C. § 3114,
provides:
    Vesting of title.–On filing the declaration of taking
    and depositing in the court, to the use of the persons
    entitled to the compensation, the amount of the
    estimated compensation stated in the declaration–
        (1) title to the estate or interest specified
        in the declaration vests in the Government;
        (2) the land is condemned and taken for the use of
        the Government; and
        (3) the right to just compensation for the
        land vests in the persons entitled to the
        compensation.
See also U.S. v. 2,175.86 Acres of Land, More or Less, Situated in
Hardin and Jefferson Counties, State of Tex., 696 F.2d 351, 353
(5th Cir. 1983) ("Under the Declaration of Taking Act, 40 U.S.C.
[§ 3114], the government obtains title to the land immediately
upon filing a declaration of taking and depositing the estimated
amount of just compensation with the court."). Thus, when it
filed its Declaration of Taking and deposited the funds into the
court registry in Civil Action No. 3:09CV269HTW–LRA, the United
States immediately became the owner of the subject property and
plaintiffs herein had only a vested right to just compensation.
See id.; see also U.S. v. 191.07 Acres of Land, 482 F.3d 1132,
1139–1140 (9th Cir. 2007).

prejudice.  Reunion further acknowledged that its claims under the APA (count three) and the Declaratory Judgment Act (count four) "plainly have aspects that relate to Reunion's alleged immediate, ongoing right to possession of the property," and it consented to dismissal of these claims without prejudice "insofar as, but only insofar as" these claims relate to the issue of immediate, ongoing right of possession.  However, it was "not yet prepared to say" that these claims are limited to the issue of the immediate, ongoing right of possession,[8] and it suggested that it is the Government's burden to show that the Declaration of Taking had mooted these claims in their entirety.

The Government, as had Reunion, initially responded via email, in which it agreed that counts two, five, six, seven and eight, all of which clearly relate solely to Reunion's effort to have the FAA removed from the property, had become moot by virtue of the Declaration of Taking, though the Government took the

---

[8]    Reunion's position in this regard would appear to be at odds with its unequivocal statement in its response to the Government's motion to dismiss or for summary judgment, that "in so far as it relates to the moving Defendants . . . the Complaint is about one thing and one thing only:  immediate right of possession.  *See Complaint* Count Three (Administrative Procedures Act); Four (Declaratory Judgment)...."  Given that no claim is made, nor relief sought, in either of these counts against the Doe and Roe defendants that is not also made against the United States, it should follow that Reunion's position is that these two counts "are about one thing and one thing only: immediate right of possession," and consequently are moot.  Yet Reunion is unwilling at this time to agree that these claims are not limited to possession of the property and therefore moot.

position that the dismissal should be *with* prejudice.  The

Government further contended that count four, for declaratory

judgment, has likewise become moot, since Reunion's rights have

now been conclusively established by the Declaration of Taking;

and it asserted that the APA count has become moot, though no

clear basis was identified for this assertion.  The United States

has since formalized its position with respect to the effect of

the Declaration of Taking by filing a motion to dismiss, setting

forth its position that the Declaration of Taking has rendered

counts two through eight moot.  Therein, it also reiterates its

position, set forth in its original motion to dismiss, that the

Reunion has no cognizable <u>Bivens</u> claim against the Doe and Roe

defendants.  The court has carefully considered the parties'

positions and concludes as follows.

The parties expressly agree that the effect of the

Government's Declaration of Taking is to render moot Reunion's

claims to establish its right to possession of the subject

property to the exclusion of the Government and to remove the

Government from the property.[9]  To the extent there are

---

[9]    The Constitution limits the jurisdiction of federal
courts to actual "cases" or "controversies."  <u>See</u> U.S. Const.,
art. III, § 2, cl. 1.  "To qualify as a case fit for federal-court
adjudication, an actual controversy must be extant at all stages
of review, not merely at the time the complaint is filed."
<u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 67, 117 S.
Ct. 1055, 137 L. Ed. 2d 170 (1997) (internal quotation marks
omitted).  Under the mootness doctrine, a federal court lacks
subject matter jurisdiction to hear cases in which, due to the

11

disagreements between the parties, such disagreements apparently relate only to whether a dismissal of claims on this basis should be with or without prejudice, and whether the APA and/or Declaratory Judgment Act counts are entirely moot, or only partially moot.

As to the first issue, the court is of the opinion that all of Reunion's causes of action involving its alleged right to immediate, ongoing possession of the subject property are *permanently* moot. Such claims will therefore be dismissed *with prejudice*. This conclusion clearly applies to counts two, five, six, seven and eight, which indisputably relate solely to this issue. See Hearn v. Sanders, No. CV 09-2220-PA (AGR), 2009 WL 3073128, 4 n.5 (C.D. Cal. Sept. 19, 2009) ("A dismissal for mootness should be with prejudice '[i]f defendant can never again engage in the challenged conduct.'"(quoting Landers v. Curran & Connors, Inc., No. C 05-03169 WHA, 2006 WL 708948, *2 (N.D. Cal. Mar. 21, 2006)).

In count three of the complaint, brought under the Administrative Procedures Act (APA), 5 U.S.C. § 701 et seq., Reunion challenges the FAA's alleged decision to disregard its own regulations and to make itself a holdover tenant following

parties' changed circumstances, the court can no longer accord any effective relief to the parties. Jackson Court Condominiums, Inc. v. City of New Orleans, 665 F. Supp. 1235, 1240 (E.D. La. 1987) (citing DeFunis v. Odegaard, 416 U.S. 312, 94 S. Ct. 1704, 40 L. Ed. 2d 164 (1974)).

expiration of the lease.  As relief, Reunion requests that the

court compel the FAA to remove itself from the VORTAC property and

"hold unlawful and set aside" the FAA's action in making itself a

holdover tenant.  Reunion admits that the United States'

Declaration of Taking has directly rendered moot the part of this

count which seeks to have the FAA removed from the property, but,

again, is unwilling to concede that the count is moot in its

entirety.  In the court's opinion, however, the only relief that

was ever available to Reunion under the APA was the FAA's removal

from the VORTAC property; and since that relief is no longer

available, the entire claim is now moot.

Congress has waived sovereign immunity for cases that fall

within the judicial review provisions of the APA, 5 U.S.C.

§§ 701-06.  Section 702 of the APA states:

> A person suffering legal wrong because of agency action,
> or adversely affected or aggrieved by agency action
> within the meaning of a relevant statute, is entitled to
> judicial review thereof.  An action in a court of the
> United States seeking relief other than money damages
> and stating a claim that an agency or an officer or
> employee thereof acted or failed to act in an official
> capacity or under color of legal authority shall not be
> dismissed nor relief therein be denied on the ground
> that it is against the United States or that the United
> States is an indispensable party.  The United States may
> be named as a defendant in any such action, and a
> judgment or decree may be entered against the United
> States....

5 U.S.C. § 702.  Section 704 of the APA provides that "[a]gency

action made reviewable by statute and final agency action for

which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Under these provisions, in order for a district court to have jurisdiction under the APA in a nonstatutory review action, the claim must be for "relief other than money damages," id. § 702, and there must be "no other adequate remedy in a court," id. § 704. See Bowen v. Massachusetts, 487 U.S. 879, 891-92, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988).

In this case, Reunion's APA count does not demand an award of monetary damages, but rather asks that the FAA be removed from the property and that the FAA's decision to become a holdover tenant be "held unlawful and set aside." In the briefing on the Government's initial motion to dismiss, Reunion took the position that this was clearly a demand for nonmonetary relief and hence cognizable under the APA. For its part, the Government acknowledged that on its face, Reunion's complaint did not ask for monetary relief. The Government maintained, however, that Reunion's putative claims for equitable relief, i.e., injunctive and declaratory relief, were merely disguised claims for monetary damages, which are not cognizable under the APA, see 5 U.S.C. § 702, and/or which are within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, see Amoco Prod. Co. v. Hodel, 815 F.2d 352, 361 (5th Cir. 1987) (stating that "a plaintiff cannot avoid Tucker Act jurisdiction simply by

14

characterizing an action as equitable relief"). In response, Reunion pointed out that "[i]f the declaratory or injunctive relief a claimant seeks has significant prospective or considerable value apart from merely determining monetary liability of the government ... the district court may assume jurisdiction over the nonmonetary claims." Amoco Prod. Co., 815 F.2d at 361–362 (quoting Hahn v. United States, 757 F.2d 581, 590 (3d Cir. 1985). Reunion then declared: "No one can deny that an order recognizing [Reunion's] right to possession of the [property] in question would have 'significant prospective effect or considerable value apart from merely determining monetary liability of the government."

Given that the United States has filed a Declaration of Taking so that "an order recognizing [Reunion's] right to possession of the [VORTAC property]" is no longer available, the only conceivable remedy available to Reunion if the court were to "hold unlawful and set aside" the FAA's decision to remain in possession of the VORTAC property following expiration of the lease agreement, would be monetary relief. This relief is not available under the APA.[10]

_____

[10] The court would further note that since the availability of injunctive relief is no longer at issue, and the only meaningful remedy available to Reunion is monetary relief, the Tucker Act provides Reunion with an "adequate remedy" within the meaning of § 704 of the APA. See Mitchell v. United States, 930 F.2d 893, 897 (Fed. Cir. 1991) ("Regardless of whether Mitchell's

15

A similar analysis applies to Reunion's claim for declaratory judgment. The Government initially moved to dismiss Reunion's declaratory judgment claim (as well as most of its other claims) for lack of subject matter jurisdiction on the basis that Reunion's claim was actually a disguised claim for a money judgment in excess of $10,000 and that therefore, jurisdiction properly lay in the Court of Federal Claims under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) & 1491(a). Under the Tucker Act, any claim against the United States exceeding $10,000 in amount, and founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, falls within the exclusive jurisdiction of the Court of Federal Claims. See 28 U.S.C. § 1346(a)(2) & 28 U.S.C. § 1491(a)(1); Amoco Prod. Co., 815 F.2d at 358. The Government now takes the position that the claim for declaratory judgment has become moot, since the rights of the parties vis-a-vis the property are clearly established by the Declaration of Taking, which has become effective by operation of law.

A review of the declaratory judgment count shows that, in addition to seeking a declaratory judgment that it is entitled to

case is a disguised claim for money, 5 U.S.C. § 704 deprives the district court of jurisdiction.").

16

immediate and exclusive possession of the VORTAC property and is
entitled to use self-help to remove defendants from the property –
claims which Reunion concedes are moot – count four of Reunion's
complaint seeks a declaratory judgment that the FAA and Doe Two
and Roe Two have been unlawfully occupying the property since
October 1, 2008 in violation of plaintiffs' Fifth Amendment due
process rights and their right to just compensation for a taking
for public use.  The fact that the United States filed a
Declaration of Taking on December 31, 2009, and has lawfully
occupied the property since that date, obviously moots any request
for an adjudication that the FAA's occupancy of the property since
that date has been unlawful.  However, to the extent Reunion seeks
a declaratory judgment that its due process rights were violated
and/or that a taking without just compensation occurred due to the
FAA's occupancy of the property from the time the lease expired to
the date the Declaration of Taking was filed, the claim was not
rendered moot by the Declaration of Taking.[11]  Nevertheless, at
least with respect to the takings claim, since the FAA cannot be
removed from the property, the only possible aim of the
declaratory judgment count at this point would be to establish a
right to recover just compensation for the FAA's temporary taking

_____

[11]    As the Court of Federal Claims recognized in its
opinion, the Declaration of Taking applies only prospectively.
See Reunion, Inc., 90 Fed. Cl. at 578.

of the property during the period between termination of the lease

and the Declaration of Taking; and exclusive jurisdiction over

such claim is in the Court of Federal Claims. See Amoco Prod.

Co., 815 F.2d at 361 ("[W]here the real effort of the complaining

party is to obtain money from the federal government, the

exclusive jurisdiction of the [Court of Federal Claims] ... cannot

be evaded or avoided by framing a district court complaint to

appear to seek only injunctive, mandatory or declaratory relief

against government officials or the government itself.") (citation

omitted).[12]

In light of the Declaration of Taking, Reunion's further

claim for a declaratory judgment that its due process rights were

violated by defendants' occupancy of the property from the time

the lease expired to the date the United States filed its

Declaration of Taking, can only be intended as a predicate for

---

[12]     Even if this court had jurisdiction of this claim,
Reunion's request for a declaratory judgment from this court that
a taking occurred is not only duplicative of the liability aspect
of the takings claim in the Court of Federal Claims, which would
counsel against this court's exercise of jurisdiction over the
claim, but in addition, the Court of Federal Claims has already
ruled, finding that for the period at issue, there was a taking by
the Government, for which Reunion is entitled to just
compensation.  Certainly in light of that ruling, this court would
not assume jurisdiction over Reunion's request for a declaratory
judgment that a taking occurred.  Cf. Friedman's, Inc. v. Dunlap,
290 F.3d 191, 197 (4th Cir. 2002) (recognizing that claim becomes
moot when claimant receives the relief he sought to obtain through
the claim, so that when one state court orders the same relief
sought by the plaintiff in a parallel action, there is no longer a
live controversy).

monetary liability, and ultimately as a basis for securing monetary relief. However, such monetary relief is not available in this court. The court recognizes that Reunion has asserted in this case a claim for money damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq.; yet it has no cognizable claim under the FTCA for any alleged *due process* violation. See F.D.I.C. v. Meyer, 510 U.S. 471, 477-478, 114 S. Ct. 996, 1001, 127 L. Ed. 2d 308 (1994) (holding that constitutional tort claim (for alleged violation of due process rights) is not "cognizable" under FTCA, § 1346(b)).[13] And while it has undertaken to bring a Bivens claim against the Doe and Roe defendants, the court concludes *infra* that no Bivens claim is available to them. Therefore, the court concludes that Reunion's declaratory judgment due process claim is, in effect, a claim for money damages, over

---

[13] Reunion has not alleged a specific basis for its FTCA claim but rather has generally charged that it has "suffered damages proximately caused by the negligence and/or wrongful acts and omissions of employees of the United States of America while acting within the scope of their office or employment...." This claim was first brought after briefing on the Government's original motion to dismiss was already complete; thus, that motion did not address Reunion's FTCA claim. In its recently-filed motion to dismiss, the Government does not refer to the FTCA claim specifically, though after addressing some specific counts, it does declare that "{a]ll remaining counts should be dismissed" for the reasons identified in the original motion. Thus, to date, defendants have not identified any basis for dismissal of the FTCA claim or affirmatively sought dismissal of this claim. And, while the court does conclude herein that Reunion cannot base its FTCA claim on a due process violation, it is not otherwise apparent that it has no viable FTCA claim.

which this court lacks subject matter jurisdiction.  <u>See</u> <u>Strong v.</u> <u>Dept. of Army</u>, 414 F. Supp. 2d 625, 630 (S.D. Miss. 2005) (finding that Court of Federal Claims had exclusive jurisdiction over due process claim seeking damages of more than $10,000).

Count one of Reunion's complaint is a putative <u>Bivens</u> damages claim against individual FAA officials who are alleged to have violated FAA regulations, resulting in the alleged seizure of Reunion's property without due process of law and without just compensation.[14]  In <u>Bivens</u>, the Court held that where a Government employee acting under color of federal law violates individual rights, courts may recognize an action for damages against that federal employee.  <u>Bivens v. Six Unknown Federal Agents</u>, 403 U.S. 388, 395-96, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).  However, <u>Bivens</u> damages claims are not available for every constitutional

---

[14]    Reunion alleges as follows:  that because it recognizes that it violates a landowner's due process and just compensation rights when it becomes a holdover tenant, the FAA has adopted formal regulations designed to avoid becoming a holdover tenant; that when the FAA timely and correctly follows its own regulations, it learns in advance whether the landowner is willing to renew, at which time it takes appropriate steps to either move the facility or condemn the property; that with respect to the VORTAC property lease, FAA officials John Doe One and Jane Roe One "pursued a course of action that they knew was in violation of FAA's own regulations, ... and that they knew would result in [Reunion's] being deprived of [its] property without due process of law, and without just compensation," in violation of Reunion's rights under the Fifth Amendment; and that these individuals are liable to Reunion, individually, for actual and punitive damages.

violation by federal defendants.  Most recently, in <u>Wilkie v.</u>

<u>Robbins</u>, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007),

the Supreme Court outlined a two-step analysis for whether to

imply a <u>Bivens</u> cause of action:

> [O]ur consideration of a <u>Bivens</u> request follows a
> familiar sequence, and on the assumption that a
> constitutionally recognized interest is adversely
> affected by the actions of federal employees, the
> decision whether to recognize a <u>Bivens</u> remedy may
> require two steps.  In the first place, there is the
> question whether any alternative, existing process for
> protecting the interest amounts to a convincing reason
> for the Judicial Branch to refrain from providing a new
> and freestanding remedy in damages.  But even in the
> absence of an alternative, a <u>Bivens</u> remedy is a subject
> of judgment: "the federal courts must make the kind of
> remedial determination that is appropriate for a
> common-law tribunal, paying particular heed, however, to
> any special factors counselling hesitation before
> authorizing a new kind of federal litigation.

551, U.S. at 550, 127 S. Ct. at 2588.

Ultimately, as Reunion has characterized them, the actions of

FAA officials with respect to the VORTAC property lease, and their

alleged failure to take appropriate and timely steps to either

vacate or condemn the property to avoid becoming a holdover

tenant, as dictated by its own regulations, amounted to a decision

by the FAA to become a holdover tenant, for which Reunion sought

review under the APA.  This court herein does hold that relief is

no longer available under the APA since the United States has

filed its Declaration of Taking.  Nevertheless, as Reunion has

expressly acknowledged, for that period of time during which the

FAA occupied the property after the lease expired but before the Declaration of Taking was filed, the APA provided for review of and explicit (nonmonetary) remedies for the alleged actions by the defendant FAA officials that resulted in Reunion's alleged deprivation of its property without due process.[15] See Wilkie, 551 U.S. at 550, 127 S. Ct. 2588 (observing that landowner had an adequate remedy for alleged "unfavorable agency actions," because, "administrative review was available, subject to ultimate judicial review under the APA");[16] see also Western Radio Servs. Co. v. U.S.

---

[15]   In response to defendants' motion to dismiss, Reunion expressly declares:  "At the outset let us note one statement in (defendants') brief that is unqualifiedly correct: '[t]he APA provides explicit remedies for such constitutional violations. The 'such constitutional violations' are the ones alleged in the Complaint."

[16]   In Wilkie, a ranch owner accused officials of the Bureau of Land Management of harassment and intimidation aimed at coercing him into granting the government an easement across his property.  In his putative Bivens claim, the ranch owner alleged that the officers, through various misdeeds, violated his Fourth and Fifth Amendment rights by "retaliating against the exercise of [his] ownership rights."  Id. at 549, 127 S. Ct. at 2597.  The Supreme Court found that the ranch owner had an administrative, and ultimately a judicial, process for vindicating virtually all of his complaints, id. at 537, 127 S. Ct. at 2599, so that when each of the incidents of which he complained were examined one by one, the ranch owner's situation "[did] not not call for creating a constitutional cause of action for want of other means of vindication." Id. at 555, 127 S. Ct. at 2600.  However, "the forums of defense and redress open to [him were] a patchwork, an assemblage of state and federal, administrative and judicial benches applying regulations, statutes and common law rules," from which the Court found it "would be hard to infer that Congress expected the Judiciary to stay its Bivens hand, but equally hard to extract any clear lesson that Bivens ought to spawn a new claim." Id. at 554, 127 S. Ct. 2600.  Thus, the Court held that

Forest Serv., 578 F.3d 1116, 1123 (9th Cir. 2009) (concluding that
"the APA leaves no room for Bivens claims based on agency action
or inaction," reasoning that "'the design of the APA raises the
inference that Congress "expected the Judiciary to stay its Bivens
hand' and provides 'a convincing reason for the Judicial Branch to
refrain from providing a new and freestanding remedy in damages,'
notwithstanding the unavailability of money damages against
individual officers or the right to a jury trial") (quoting
Wilkie, 551 U.S. at 550, 554, 127 S. Ct. 2588).  Furthermore,
numerous cases have recognized that a plaintiff does not have an
implied cause of action under Bivens for a Fifth Amendment takings
claim because there is an express cause of action for such a claim
under the Tucker Act, 28 U.S.C. § 1491.  See, e.g., Anoushiravani
v. Fishel, No. CV 04-212-MO, 2004 WL 1630240, 8-9 (D. Or. July 19,
2004 (stating that "because the Tucker Act, in coordination with

---

the case could not be disposed of at step one of its Bivens
analysis and that the case was one for "for Bivens step two, for
weighing reasons for and against the creation of a new cause of
action, the way common law judges have always done." Id., 127 S.
Ct. at 2600. Ultimately, recognizing that, in essence, the ranch
owners' allegation was that federal officials had gone too far or
pushed too hard on the government's behalf, the Court reasoned
that it would be too difficult to draw a line between
"legitimately hard bargaining" and "illegitimate pressure," id. at
562, 127 S. Ct. at 2604, and that in light of the "serious
difficulty of devising a workable cause of action," "a general
Bivens cure would be worse than the disease." Id. at 561, 127 S.
Ct. at 2605.  Therefore, the Court held that the plaintiffs had no
implied right of action for damages under Bivens.  Id., 127 S. Ct.
at 2588.

the Fifth Amendment, provides an express remedy for plaintiff's takings claim against defendant (federal official), the court does not imply a cause of action for such claims under <u>Bivens</u>"). For these reasons, the court concludes that Reunion's putative <u>Bivens</u> claim is should be dismissed.

In conclusion, based on all of the foregoing, it is ordered that defendants' motion to dismiss [Dkt. #7] is granted, and it is further ordered that plaintiffs' motion for partial summary judgment on counts three, four, five, six, seven and eight [Dkt. #12], is denied. It is further ordered that defendants' motion to dismiss [Dkt. #25] is granted in part, as set forth herein, but ruling on that part of this motion to dismiss pertaining to Reunion's FOIA claim is reserved at this time.

SO ORDERED this 30th day of March, 2010.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE